Merrimack
No. 2012-091

THE STATE OF NEW HAMPSHIRE

v.

NICHOLAS TREBIAN

Argued: January 10, 2013
Opinion Issued: February 25, 2013

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, Nicholas Trebian, was convicted of possession of marijuana with intent to sell and possession of a controlled drug commonly known as "ecstasy," following a jury trial in Superior Court (*Smukler*, J.). *See* RSA 318-B:2, I (2011). On appeal, he argues that the trial court erred in denying his motion to dismiss the ecstasy possession charge. We affirm.

The jury could have found the following facts. On the evening of May 5, 2010, while walking his dog near his home in Allenstown, Jeffrey Gardner heard the squeal of rubber on pavement followed by a loud crash. Gardner, who is a part-time firefighter and emergency medical technician (EMT), got into his truck and drove to the accident scene on nearby Granite Street. When he arrived, he saw the headlights on the car involved "flash," as though someone nearby had locked the car remotely. He approached the car, saw no one, and called the Allenstown police to report the accident. While on his cellular telephone, he heard sounds of movement in the bushes nearby. Gardner identified himself as an EMT and, holding up his flashlight, ordered the person to come out of the bushes. At that point, a man emerged, telling Gardner that he was "all set" and adamantly asserting that Gardner should get off the cell phone and not call the police. The man, who was tense and angry, approached to nearly within arm's reach of Gardner. When the man saw the blue lights of a police cruiser approaching, he ran off through an adjacent cemetery.

When Lieutenant Paul Paquette of the Allenstown Police Department arrived, he determined that the vehicle was registered to Amanda Guay, whom he later learned was the defendant's girlfriend. Unable to contact Guay to inquire about the driver of the vehicle, he called for a tow truck. When the tow truck arrived, Paquette unlocked the vehicle and began an inventory search. As he leaned into the vehicle, he detected a very strong odor of marijuana. When he looked into the back seat, he discovered a partially opened duffel bag containing what appeared to be a large bag of marijuana. At that point, he stopped his search, had the vehicle towed to the police station, and, the following day, obtained a search warrant.

During the search pursuant to the warrant, Detective George Baker discovered, inside the pocket on the driver's door, a registration in the name of Nicholas Trebian, a bill of sale, and a temporary registration in the name of Amanda Guay. From the duffel bag in the back seat, Baker seized two small plastic bags of vegetative matter that appeared to him to be marijuana, as well as a larger, gallon-sized bag containing a "brick" of what appeared to be compressed marijuana. The bags were sent to the State laboratory for analysis. In addition, Baker retrieved some papers, a pipe, a grinder used to break up marijuana, a scale, some items of men's clothing, and receipts for purchases made at Wal-Mart and Cumberland Farms. At trial, the defendant and the State stipulated that the receipts belonged to the defendant and that no other person was with him when he made the purchases.

On the day after the accident, Gardner went to the Allenstown police station to view a photographic array. Gardner immediately selected the defendant's photo, concluding that he was "a hundred percent" certain that the defendant was the man whom he had encountered at the accident scene.

The State laboratory analysis of the vegetative matter confirmed that it was marijuana. The chemist conducting the analysis discovered two ecstasy pills that had not been found during the search of the vehicle. The defendant was subsequently charged with possession of marijuana with intent to distribute and possession of ecstasy.

After the State presented its case, the defendant moved to dismiss the possession of ecstasy charge, arguing that the police officer who sent the marijuana to the laboratory did not know of the presence of the pills and that the chemist was surprised to discover them inside one of the bags of marijuana. Consequently, the defendant asserted, the State failed to prove his knowledge of the presence of the ecstasy pills. The trial court denied the motion. The jury found the defendant guilty on both counts. This appeal followed.

On appeal, the defendant argues that the trial court erred in denying his motion to dismiss the possession of ecstasy charge because the State produced no evidence tying him specifically to the ecstasy pills found in the bag of marijuana. The State counters that the evidence was sufficient to prove both that the defendant possessed the ecstasy and that he knew of its presence. Although at oral argument, the defendant asserted that the ecstasy pills were found within the brick of marijuana, which was "very tightly compressed," he has not briefed this contention, and the record does not support it. Accordingly, we decline to address this contention specifically. *See State v. Tallard*, 149 N.H. 183, 188 (2003).

■ To prevail upon a sufficiency of the evidence challenge, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Gibbs*, 164 N.H. 439, 445 (2012). When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. *Id.* The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all such *rational* conclusions based upon the evidence have been excluded. *State v. Duran*, 162 N.H. 369, 372 (2011).

■ To obtain a conviction for possession of a controlled drug, the State must prove beyond a reasonable doubt that the defendant: (1) had knowledge of the nature of the drug; (2) had knowledge of its presence in his vicinity; and (3) had custody of the drug and exercised dominion and control over it. *State v. Smalley*, 148 N.H. 66, 68 (2002). Where, as here, the drug was not in the defendant's physical possession, the State must prove constructive possession. *Duran*, 162 N.H. at 372. Constructive possession can be inferred from circumstances linking the defendant to the drugs, such as personal possessions found near the drugs. *Smalley*, 148 N.H. at 69. Additionally, "constructive possession may be shown when other facts buttress an inference of [the] defendant's knowledge of the presence of the controlled substance." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. 1992) (en banc); *see Duran*, 162 N.H. at 372.

For the purpose of this appeal, the defendant concedes that the evidence was legally sufficient to prove his constructive possession of the marijuana. He asserts, however, that "[t]he connection specifically to the ecstasy pills within the marijuana bags . . . is too tenuous." We disagree.

The defendant contends that this case is similar to *State v. Allen*, 723 N.E.2d 674 (Ohio Ct. Com. Pl. 1999). In *Allen*, the defendant was charged with possession of crack cocaine after a crack pipe was found in his sock. *Id.* at 675. The court concluded that, "[b]ased upon all the facts and circumstances in evidence, [it could not] find beyond a reasonable doubt that the defendant 'knowingly possessed' crack cocaine as alleged in the indictment." *Id.* at 676. The trial court noted that the officer saw no indication that the defendant was using drugs or any movements suggesting that he put anything in his sock. *Id.* To be sure, *Allen* contains language that appears to support the defendant's position: "It is just as possible that he had [the crack pipe] for some time, that it was given to him by his companion before the officer spotted them, or that he found it lying on the grounds of the public housing project." *Id.*

*Allen,* however, is distinguishable. Although analysis of the residue in the crack pipe field-tested positive for cocaine, the chemist testified that "crack and powder [cocaine] would look identical." *Id.* at 675. Because the defendant was charged with possession of *crack* cocaine, and because the court could not find beyond a reasonable doubt that the residue in the pipe was crack cocaine, as opposed to powder cocaine, it found the defendant not guilty. *Id.* at 677. Hence, it was the prosecution's inability to prove the nature of the drug, rather than its inability to prove "possession" of the drug, that resulted in the not guilty finding. Here, however, the controlled drug found in the marijuana bag — ecstasy — was the drug that the indictment charged the defendant with possessing.

 Viewing the evidence in the light most favorable to the State, as we must, we conclude that a rational juror could have found beyond a reasonable doubt that the defendant possessed the ecstasy pills. *See United States v. Howard,* 687 F.3d 13, 20-21 (1st Cir. 2012) (noting that it was within jury's prerogative to choose which inference regarding constructive possession seemed most worthy of belief). "Since it is impossible to look into the mind of the defendant, whether or not he had knowledge that he was possessing [the ecstasy pills] must be determined from all the facts and circumstances in evidence." *Allen,* 723 N.E.2d at 675. The ecstasy pills were discovered inside one of the bags of marijuana, which was itself inside a duffel bag containing men's clothing and receipts for purchases made by the defendant. As we have previously stated, "[e]vidence of 'personal possessions of the defendant standing in close proximity to the controlled substance may provide a sufficiently close nexus between the defendant and the substance to allow the jury to infer possession.'" *Smalley,* 148 N.H. at 69. Here, not only were the ecstasy pills "in close proximity" to the marijuana, which the defendant concedes he constructively possessed, they were actually contained in one of the bags of marijuana. *See State v. Stiles,* 128 N.H. 81, 86 (1986). Considering the evidence, and all reasonable inferences drawn from it, in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that the defendant possessed the ecstasy pills. *See Duran,* 162 N.H. at 373 (rejecting defendant's argument that another inmate could have placed shank in defendant's bag); *cf. Com. v. McCollum,* 945 N.E.2d 937, 947 (Mass. App. Ct.) (finding insufficient evidence of cocaine possession where prosecution introduced no evidence that defendant stored any of his personal effects in bedroom or ever accessed bedroom closet or underside of mattress where cocaine was found), *review denied,* 953 N.E.2d 720 (Mass. 2011). Accordingly, we affirm.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.