IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 6, 2009 Session Heard in Columbia[1]

## STATE OF TENNESSEE v. MARCUS RICHARDS

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Williamson County
No. II-CR-101400    Timothy L. Easter, Judge**

_____

**No. M2006-02179-SC-R11-CD - Filed July 10, 2009**

_____


WILLIAM C. KOCH, JR., J., dissenting.


        The pivotal question in this case is straightforward.  Did the law enforcement officers who came upon Marcus Richards and his three associates sitting at a picnic table on which residue of powder cocaine was in plain view have probable cause to search Mr. Richards incident to arresting him for the simple possession of the cocaine on the table?  The Court has concluded that they did not.  I respectfully disagree.  Based on the essentially undisputed facts, I would affirm the trial court's conclusion that the warrantless search incident to Mr. Richards's arrest was valid.

**I.**

        On June 3, 2005, Lieutenant Chris Clausi received a telephone call from a concerned citizen.  The informant reported that a "drug deal" had taken place between Trent Covington and a man who drove a "purple truck" while the two men were sitting at a picnic table behind Mr. Covington's house.  The informant also reported that a girl who "was in drug court" was present.  Based on these descriptions, Lieutenant Clausi was able to identify both the man in the purple truck and the woman.  The man in the purple truck was Maurice Head.

        Lieutenant Clausi passed along the informant's information to Officer Brent Rose and Officer André Davis.  Officers Rose and Davis drove to Mr. Covington's house and approached the back yard surreptitiously.  When he was able to see the back yard, Officer Davis saw four persons sitting at a picnic table.[2]  When Officers Rose and Davis made their presence known and approached the table, Officer Davis observed that the persons sitting at the table had expressions like those of

[1] Oral argument was heard in this case on February 6, 2009 at Columbia State Community College in Columbia, Maury County, Tennessee, as part of the Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) Project.

[2] These persons were Mr. Covington, Mr. Head, Mr. Richards, and the lady from the drug court.

persons "involved in something that they shouldn't be." Officer Rose also observed Mr. Head sweep his arm across the top of the table and drop what later proved to be a "corner baggie" between his legs. Officer Rose ordered all the persons seated at the table to remain still.

When the officers neared the picnic table, they observed a white power that appeared to be cocaine spread on the table and caught in the cracks of the tabletop. They also observed white powder on the ground. Officer Rose testified that the white powder was "on the picnic table in front of where [Mr. Head] was sitting." Officer Davis testified that "[t]here was cocaine all on the table, there was cocaine by where Mr. Head was sitting, there was cocaine by where Mr. Richards was sitting, and there was cocaine" on the ground. He also testified that both Mr. Covington and Mr. Richards had immediate access to the cocaine on the table.

Officer Rose instructed Mr. Head to open his clenched fist, and when Mr. Head complied, the officers observed a rolled up dollar bill with white powder on one end. After Officer Davis patted down Mr. Richards for weapons, he instructed Mr. Richards to remain seated. During the search of Mr. Covington, who was wheelchair bound, the officers discovered white powder residue on the seat of his wheelchair. While there was insufficient powder on the table to collect for further analysis, the officers conducted field tests that identified the powder on the table and the powder on Mr. Covington's wheelchair as cocaine. Following the search of Mr. Covington, the officers searched Mr. Richards a second time. During this search, the officers discovered a bag of cocaine and a bag of marijuana in Mr. Richards's pocket.

Mr. Richards was charged with simple possession. The trial court denied his motion to suppress. While the Court of Criminal Appeals concluded that the first pat down search of Mr. Richards was valid, it invalidated the second search because it "went beyond what was necessary for a *Terry* search." *State v. Richards*, No. M2006-02179-CCA-R3-CD, 2008 WL 343150, at *6 (Tenn. Crim. App. Feb. 6, 2008). The Court now affirms the result of the Court of Criminal Appeals' opinion on the ground that "the officers lacked probable cause to believe that [Mr. Richards] had committed an offense [for which a full custodial arrest is permitted]."

**II.**

The Court's opinion in this case provides a helpful synthesis of the principles relevant to determining whether a warrantless search incident to an arrest is valid. For a warrantless search to be valid, the Court states (1) that the arresting officer(s) must have probable cause to believe that the defendant had engaged or was engaging in illegal activity; (2) that the officer(s) had full authority to effect a full custodial arrest for the offense for which there is probable cause to arrest the defendant; (3) that the arrest must occur prior to or contemporaneously with the search; and (4) that the search must be incident to, rather than the cause of, the arrest. I agree with virtually all of the Court's discussion regarding these four factors, although I believe that some elaboration regarding Factor (3) is warranted.

As I understand the Court's opinion, it has concluded that the warrantless search of Mr. Richards was invalid because the State has failed to satisfy Factors (1) and (4). That is, the Court

has concluded that Mr. Richards's arrest was not supported by probable cause and that the search was the cause of, and not incident to, Mr. Richards's arrest. I have concluded that the facts require the contrary conclusion.

**A.**

The probable cause standard is a "practical, nontechnical" conception that deals with "the factual and practical considerations of everyday life on which reasonable . . . [persons], not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989); *State v. Banner*, 685 S.W.2d 298, 300 (Tenn. Crim. App. 1984). It is a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause is "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Mere suspicion is insufficient to establish probable cause. *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005).

Probable cause must be particularized with respect to the individual and cannot be based on "mere propinquity to others independently suspected of criminal activity." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). In *Ybarra*, the Court invalidated the search of the patron of a bar when the police had a search warrant only for the premises and the bartender and had no probable cause to suspect the defendant individually of wrongdoing. *Ybarra v. Illinois*, 444 U.S. at 90-91.

While probable cause must attach to a particular individual, particularized probable cause can come from the reasonable inference that the individual is involved in a common criminal enterprise or has knowledge of and exercises control over the contraband. *Maryland v. Pringle*, 540 U.S. at 372-73. In *Maryland v. Pringle*, the defendant was a passenger in a car in which large quantities of cash and drugs were found. None of the vehicle's occupants claimed possession of the illegal substances. *Maryland v. Pringle*, 540 U.S. at 371-72. The Court upheld the defendant's arrest, noting that it was reasonable to infer "a common enterprise among the three men." *Maryland v. Pringle*, 540 U.S. at 373.

**B.**

Simple possession of cocaine and marijuana is a Class A misdemeanor. Tenn. Code Ann. § 39-17-418(a) (2006). Possession requires some showing that the defendant was in a position to exercise control over the controlled substance. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). The possession or control may be actual or constructive. *State v. Shaw*, 37 S.W.3d at 903. Constructive possession, "the ability to reduce an object to actual possession," *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir.1979)), requires proof of "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." *State v. Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997) (quoting *State v. Cooper*, 736 S.W.2d at 129)).

Possession need not be exclusive and may be exercised jointly with more than one person. *E.g., Maryland v. Pringle*, 540 U.S. at 372; *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984); *Armstrong v. State*, 548 S.W.2d 334, 336-37 (Tenn. Crim. App. 1977); *Perry v. State*, 527 S.W.2d 749, 751 (Tenn. Crim. App. 1975); *see also In re D.H.*, 673 S.E.2d 191, 192 (Ga. 2009); *State v. Beaver*, 200 P.3d 490, 494 (Kan. Ct. App. 2009); *State v. Millsap*, 244 S.W.3d 786, 788 (Mo. Ct. App. 2008); *Hargrove v. State*, 211 S.W.3d 379, 385 (Tex. App. 2006); *Dodd v. Commonwealth*, 649 S.E.2d 222, 225 (Va. Ct. App. 2007). In order to prove simple possession of a controlled substance, the evidence must establish that the accused, either individually or jointly with another, exercised dominion and control over the controlled substance, had knowledge of the presence of the controlled substance, and had knowledge that the substance was, in fact, a controlled substance. Tenn. Code Ann. § 39-17-418(a); *see also State v. Thornton*, 10 S.W.3d 229, 241 (Tenn. 1999).

Possession or control cannot be established solely by evidence showing that the accused was in the vicinity of the controlled substance or that the accused was in the presence of persons possessing a controlled substance. *State v. Shaw*, 37 S.W.3d at 903; *State v. Cooper*, 736 S.W.2d at 129. When the accused is not in exclusive possession of the place where the controlled substance is found, additional incriminating facts and circumstances must be presented which affirmatively link the accused to the controlled substance in order to raise a reasonable inference of the accused's knowledge and control over the controlled substance. *Roach v. State*, 7 So.2d 911, 926-27 (Miss. 2009); *State v. Mercado*, 887 S.W.2d 688, 691 (Mo. Ct. App. 1994); *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

Other courts have listed many such factors. *See, e.g., Hargrove v. State*, 211 S.W.3d at 385-86. Most frequently, they have weighed (1) whether the drugs were in plain view[3] and (2) whether contraband was in close proximity to the defendant.[4] Courts have also considered numerous other factors, including (3) conduct on the part of the defendant indicative of guilt, including furtive gestures and flight;[5] (4) the quantity of drugs present;[6] (5) the proximity of the defendant's effects

_____

[3] *Malone v. State*, 217 S.W.3d 810, 813 (Ark. 2005) (listing factors for vehicles with multiple occupants); *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999); *State v. Abbott*, 83 P.3d 794, 799 (Kan. 2004); *State v. Woinarowicz*, 720 N.W.2d 635, 644 (N.D. 2006); *Duncan v. State*, 986 So. 2d 653, 655 (Fla. Dist. Ct. App. 2008); *State v. Rollett*, 80 S.W.3d 514, 521 (Mo. Ct. App. 2002) (superseded by statute on other grounds); *Hargrove v. State*, 211 S.W.3d at 385.

[4] *Henderson v. State*, 715 N.E.2d at 836; *State v. Abbott*, 83 P.3d at 799; *State v. Woinarowicz*, 720 N.W.2d at 644; *State v. Rollett*, 80 S.W.3d at 521; *Hargrove v. State*, 211 S.W.3d at 385.

[5] *Malone v. State*, 217 S.W.3d at 813; *Henderson v. State*, 715 N.E.2d at 836; *State v. Abbott*, 83 P.3d at 799; *Hargrove v. State*, 211 S.W.3d at 386.

[6] *State v. Barber*, 635 S.W.2d 342, 344 (Mo. 1982); *Poindexter v. State*, 153 S.W.3d at 412.

to the contraband;[7] (6) the presence of drug paraphernalia;[8] (7) whether the defendant was under the influence of or possessed additional narcotics;[9] (8) the defendant's relationship to the premises;[10] and (9) incriminating statements made by the defendant.[11]

The logical force these factors have in establishing the elements of the offense, rather than the number of factors present, should be the primary consideration. *Edwards v. State*, 178 S.W.3d 139, 144 (Tex. App. 2005). It is significant when the controlled substance is in plain view and in the presence of the accused. *Duncan v. State*, 986 So. 2d at 655. As Professor LaFave has noted, when another person is committing visibly criminal acts in the presence of the accused, "then the chances are substantially greater that a companion of the offender is something more than a mere bystander." 2 Wayne R. LaFave, *Search and Seizure* § 3.6(c), at 348 (4th ed. 2004) (footnote omitted) ("2 LaFave, *Search and Seizure*"); *see also Post v. State*, 580 S.W.2d 801, 805-06 (Tenn. Crim. App. 1979) (finding joint possession when defendant resided at mobile home where drugs were kept and knew marijuana was kept there); *Perry v. State*, 527 S.W.2d at 750-51 (finding joint possession when bricks of marijuana were found in common area and under defendant's bed, despite some evidence that other resident, along with another codefendant, were "entirely responsible" for drugs).

## C.

Mr. Richards was seated at a picnic table with three other persons when the officers first saw him. All four persons changed their behavior when the officers made their presence known and approached the table. When one of the persons seated at the table saw the officers approach, he made a sweeping motion across the table with his arm and dropped an empty "corner baggie" to the ground between his legs. As the officers neared the table, they observed white powder scattered all over the table top. This powder was "by where Mr. Richards was sitting," and was accessible to Mr. Richards. Mr. Head was holding a rolled-up dollar bill with white powder on one end. A field test confirmed that the powder on the table was cocaine, and a search of Mr. Covington's wheelchair revealed additional white powder which also tested positive for cocaine.

The "facts, circumstances, and reliable information known to the officers" in this case warrant a prudent person's belief that any or all of the persons seated at the picnic table were in possession of the cocaine spread across the table. This reasonable belief is not based merely on Mr.

---

[7] *Malone v. State*, 217 S.W.3d at 813; *Henderson v. State*, 715 N.E.2d at 836; *State v. Smalley*, 802 A.2d 1154, 1157 (N.H. 2002).

[8] *State v. Abbott*, 83 P.3d at 799; *Hargrove v. State*, 211 S.W.3d at 386.

[9] *State v. Abbott*, 83 P.3d at 799; *Hargrove v. State*, 211 S.W.3d at 386.

[10] *State v. Mercado*, 887 S.W.2d at 691; *Duncan v. State*, 986 So. 2d at 655; *Hargrove v. State*, 211 S.W.3d at 386.

[11] *Henderson v. State*, 715 N.E.2d at 836; *State v. Abbott*, 83 P.3d at 799; *State v. Rollett*, 80 S.W.3d at 521; *Hargrove v. State*, 211 S.W.3d at 386.

Richards's presence in the vicinity of the cocaine or of others who possessed the controlled substance. The cocaine was in plain view of both Mr. Richards and the officers. Unlike the defendant in *Ybarra*, Mr. Richards could not have been ignorant of the nature or presence of the controlled substance. Furthermore, Mr. Richards was seated in such proximity to the substance as to make it easily accessible to him. It was "all on the table" and "by where Mr. Richards was sitting." Unlike a bar patron thrown together with strangers through happenstance, Mr. Richards was seated at a table with a small number of acquaintances. Like the passengers in *Pringle*, none of the persons seated at the table claimed the drugs or exonerated Mr. Richards.[12] Mr. Head held a rolled-up dollar bill which the officers testified is sometimes used to snort cocaine.

These circumstances would prompt a reasonable person to believe that drugs were not merely present but that the drugs were actually being shared and used by all the persons seated at the table immediately before the officers arrived. This situation is different from, for example, the situation in *State v. Porter*, where the defendant was present in the kitchen where drugs were found, but the drugs were not in plain view and were in the exclusive control of two other persons. *State v. Porter*, No. W2004-02464-CCA-R3-CD, 2005 WL 2333569, at *3 (Tenn. Crim. App. Sept. 21, 2005) (No Tenn. R. App. P. 11 application filed). In this case, a reasonably prudent person could easily believe that Mr. Richards, jointly with the other persons seated at the table, was in possession of the cocaine. This reasonable belief serves as the basis for his warrantless arrest. The warrantless arrest, in turn, justifies the search of his person which revealed additional narcotics.

Leaning on the reasoning in *United States v. Di Re*, 332 U.S. 581, 594 (1948), the Court concludes that the citizen informant's singling out individuals other than Mr. Richards precludes finding probable cause to arrest Mr. Richards. While the informant's tip did not link Mr. Richards to the "*drug deal*" or "*drug transaction*" that the informant had witnessed earlier,[13] the officers nevertheless had probable cause to arrest Mr. Richards for possession based on the presence of the cocaine on the picnic table. What the officers ultimately discovered when they approached the picnic table was not a "drug deal" which had been consummated sometime earlier, but rather ongoing *drug use* which appeared to implicate equally all the persons seated at the picnic table. The arrest of Mr. Richards was not based on the citizen's tip but on what the officers witnessed firsthand. Had no drugs been evident when the officers arrived, probable cause to search Mr. Richards would indeed have been lacking because the citizen informant had identified only Mr. Covington and Mr. Head

---

[12] Although the Court attempts to distinguish *Pringle* on the basis that it involved an arrest rather than a search, there is no legal support for the Court's assertion that "the State is attempting to justify a warrantless *search* incident to arrest, and therefore must show that the officers had probable cause to believe that the Defendant had drugs on his person." The justification for the search is the arrest based on Mr. Richards's possession of the cocaine on the table. *Chimel v. California*, 395 U.S. 752, 762-63 (1969) ("When an arrest is made, . . . . it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."). The question then becomes the same as the one in *Pringle* – whether there was probable cause to make the individual arrest based on the presence of drugs (here, evidence in plain view on the table, and in *Pringle* evidence obtained through consensual search) equally accessible to a small group of social acquaintances.

[13] Although Officers Davis and Rose testified that they expected to find drug use at the residence, this expectation was based on their prior personal experience with Mr Covington. Lieutenant Clausi's testimony establishes that the citizen informant's tip concerned a drug deal and the consumption of alcohol but did not mention drug use.

as parties to the "drug deal."[14]   Under the circumstances of this case, however, the officers had probable cause to arrest and search Mr. Richards.

**III.**

The Court states that the third factor required for a search incident to arrest is that "the arrest must be consummated either prior to or contemporaneously with the search."  Even though the Court does not base its decision to invalidate the search of Mr. Richards on this factor, it is advisable to revisit one particular aspect of that portion of the Court's opinion.  An arrest which occurs "contemporaneously with" a search may take place immediately after the search has been completed.

The sole authority the Court cites for its assertion that an arrest must occur either prior to or contemporaneously with a search in order for the search to be "incident to" the arrest is a footnote in *State v. Crutcher*.  *State v. Crutcher*, 989 S.W.2d 295, 302 n.12 (Tenn. 1999).  The footnote, however, relies upon a decision by the United States Supreme Court upholding an arrest that took place immediately after the search.  *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).  In *State v. Crutcher*, we distinguished *Rawlings v. Kentucky* because Mr. Crutcher was not taken into police custody until several hours later and was not arrested until four days after the search.  *State v. Crutcher*, 984 S.W.2d at 302 n.12.

When we turned our attention in *State v. Crutcher* to the relationship between the search and the arrest, we noted that "[w]e decline to hold that a search may be upheld as a search incident to arrest merely because a lawful custodial arrest 'could have' been made." *State v. Crutcher,* 989 S.W.2d at 301 n.8.  In *State v. Crutcher,* the Court further explained that it was "not prepared to hold that the police may conduct a warrantless search merely because they have probable cause to arrest the suspect."  *State v. Crutcher,* 989 S.W.2d at 302.  What *State v. Crutcher* requires, then, is independent probable cause to make an arrest combined with a consummated arrest that occurred either prior to, contemporaneously with, or immediately after the search.

A search incident to arrest may precede the arrest if there is independent probable cause to justify the arrest, and the arrest is so close in time as to be part of the same transaction.  *Rawlings v. Kentucky*, 448 U.S. at 111 ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.");  *Sibron v. New York*, 392 U.S. 40, 77 (1968) (Harlan, J., concurring) ("There is no case in which a defendant may validly say, 'Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards.'");  *Warden v. State*, 214 Tenn. 314, 320, 379 S.W.2d 788, 790-91 (1964) ("It seems that the rule supported by the better principle and the weight of authority is that a search will be upheld as lawful where it is made under a valid search warrant or as an incident to a lawful arrest, even though the search actually precedes the arrest, if the two may be regarded as part of one and the same transaction.");  2 Lafave, *Search and Seizure* § 5.4(a), at 191

---

[14]The girl who "was in drug court" was also identified as present at the drug deal, though not as a participant.

(noting that there is no justification for a rule holding a search unlawful merely because it occurred prior to the arrest).

An arrest is "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody." *West v. State*, 221 Tenn. 178, 184, 425 S.W.2d 602, 605 (1968). While the arrest does not require a formal declaration or "station house booking," the arresting officer must, under legal authority, impose an actual restraint on freedom of movement. *State v. Crutcher,* 989 S.W.2d at 301-02. This restraint need not be manual touching if the arrestee submits to the officer's power. *Murphy v. State*, 194 Tenn. 698, 702, 254 S.W.2d 979, 981 (1953).

Here, it is not necessary to pinpoint the exact moment that Mr. Richards was arrested because even if Mr. Richards was not arrested until after the search, the two occurred in such close proximity that they may fairly be viewed as contemporaneous and "part of one and the same transaction." *Warden v. State*, 214 Tenn. at 320, 379 S.W.2d at 791. Because Mr. Richards's arrest was supported by probable cause to believe he was in possession of the cocaine on the picnic table and because the arrest was part of the same transaction as the search, I would not suppress the fruits of the search.

**IV.**

The Court also bases its decision to invalidate the second search of Mr. Richards on the ground that it was the cause of, rather than incident to, his arrest. The Court correctly states that the fruits of a search whose validity is premised upon the fact that it is incident to an arrest may not be the basis for the arrest itself. *See State v. Crutcher*, 989 S.W.2d at 302; *State v. McMahan*, 650 S.W.2d 383, 387 (Tenn. Crim. App. 1983); 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.5(d), at 224 (3d ed. 2007) ("2 Lafave et al., *Criminal Procedure*"). Such circular reasoning or "bootstrapping" would gut the prohibition against unreasonable searches. 2 LaFave, *Search and Seizure* § 5.4(a), at 190.

Because the Court concludes that there was no probable cause to arrest Mr. Richards based on his possession of the cocaine on the picnic table, it finds that the only possible justification for his arrest must have been the fruits of the search. The Court has therefore determined that Factor (4), requiring the search to be incident to and not the cause of the arrest, has not been satisfied. While I am in agreement that a search may not be based on an arrest that is in turn based on the fruits of the search, I find that in this case there was independent probable cause to arrest Mr. Richards based on his possession of the cocaine scattered on the picnic table. Because the arrest of Mr. Richards was based on his joint, constructive possession of the cocaine on the picnic table and not on the narcotics that were subsequently discovered during the search of his person, I find that the requirement that the search be incident to, rather than the cause of, the arrest has been met.

**V.**

The officers had probable cause to arrest Mr. Richards based on their reasonable belief that Mr. Richards jointly possessed the cocaine strewn across the picnic table in front of him. Mr.

Richards was searched and was arrested immediately after and contemporaneously with the search, as part of the same transaction. His arrest was not based on the fruits of the search. For these reasons, I would affirm the trial court's decision denying Mr. Richards's motion to suppress the evidence brought to light when he was searched the second time.

_____
WILLIAM C. KOCH, JR., JUSTICE